IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WILLIAM L. MCGRATH, | |
| **Plaintiff,** | **MEMORANDUM DECISION** |
| **vs.** | **AND ORDER** |
| JEREMIAH D. FOGARTY, FOGARTY | **Case No.  2:14CV146 DAK** |
| ENTERPRISES LLC, and HOFFMAN | |
| CONSTRUCTION COMPANY OF AMERICA, | |
| **Defendants.** | |

This matter is before the court on Defendants Jeremiah D. Fogarty and Fogarty

Enterprises LLC's (collectively, the "Fogarty Defendants") Motion for Summary Judgment[1] and

on Plaintiff William L. McGrath's Motion for Reconsideration of Order Setting Aside Entry of

Default Against the Fogarty Defendants.    A hearing on the motions was held on April 15, 2015.

At the hearing,  McGrath was represented by Jonathan W. Brogan and Heidi G. Goebel.  The

Fogarty Defendants were represented by Donald J. Winder and Laura H. Tanner.   Hoffman

---

[1]  Hoffman Construction Company of America has filed a Memorandum in Support of the Fogarty Defendants' Motion for Summary Judgment, *see* Docket No. 37, arguing that "the precise justifications for Plaintiff's contractual claims against Hoffman remain a mystery, [but] it appears that those claims derive from, and depend entirely upon, Plaintiff's dispute with Fogarty."  It further states that "[t]o the extent McGrath's claims against Hoffman depend, or are otherwise based, on his claims against Fogarty, or are otherwise based on written contracts that McGrath has failed to disclose, those claims should be dismissed on the strength of Fogarty's motion for summary judgment."  Plaintiff has not disagreed with Hoffman's position that, if the contract claims against the Fogarty Defendants are time-barred, the contract claims against Hoffman are also time-barred.

Construction Company of America ("Hoffman") was represented by Samuel Alba.   Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties.  Since taking the matter under advisement, the court has further considered the law and facts relating to these motions.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## I.  BACKGROUND

Plaintiff William McGrath is a resident of Maine and was a principal of "McLane Associates," which was in the business of construction project controls.  Specifically, McLane Associates's core business involved representing owners on complex construction projects, assisting with estimating, scheduling and cost engineering, collectively known as "project controls."   Prior to 2005, McLane Associates had provided project controls services for numerous large technology companies, including Intel Corporation ("Intel").   IM Flash Technologies, LLC ("IMFT") is a semiconductor company with Intel and Micron Technology, Inc. ("Micron") as its principals, and its principal place of business is in Lehi, Utah.

Defendant Jeremiah D. Fogarty is a citizen of the Republic of Ireland whose legal residency in the United States is pursuant to an E-2 Investor Visa that must be renewed every five years.  Fogarty Enterprises was at times relevant to this matter in the business of providing project controls services.  McGrath and Fogarty came to know each other through work for Intel Corporation.

According to McGrath, in 2005, Fogarty indicated that he was interested in transitioning into retirement in a fashion that would allow him to gradually take on fewer daily

responsibilities while providing a method for his employees to continue working without disruption during this process and after his retirement.   After significant discussion, according to McGrath, McLane Associates, Fogarty Enterprises and Fogarty entered into a contract, pursuant to which McLane Associates and Fogarty Enterprises would merge over the course of several years, with McLane Associates maintaining operational control over what had previously been the employees and assets of Fogarty Enterprises, and Fogarty's income during this time being based on a commission structure that was agreed to among the parties. McGrath further claims that during the transitional period, McLane Associates and Fogarty Enterprises were to share employees and assets but maintain separate accounts regarding work and assets devoted to McLane Associates and Fogarty Enterprises.[2]   Fogarty denies that any contract was ever executed.   He does, however, admit that the parties entered into an oral partnership agreement.

In 2005, by providing a business development lead, Fogarty introduced McLane Associates to the possibility of conducting work at a Micron facility in Manassas, Virginia on a Micron project.  McLane Associates pursued the business development lead, and Micron hired McLane Associates to implement a unit rate contract strategy and provide project controls on

---

[2]   In his Memorandum in Opposition to the Motion, McGrath clarifies that he did not intend to allege in this suit that the parties ever intended to formally merge Fogarty Enterprises and McLane Associates.  Rather, he argues, the intention was for McLane Associates to take on the hiring of certain former Fogarty Enterprises employees in support of new McLane Associates business, developed with Fogarty's help, and for Fogarty to be compensated for his services pursuant to the Contractual terms of the Commission Agreement executed by the parties. *See* Docket No. 38 at page 11 of 30.

the Base Build and Tool-Install projects in Manassas, Virginia.   Following McLane Associates's

successful execution of its work on the Base Build and Tool-Install phases of Micron's project in

Manassas, and based upon McLane's new working relationship with Fogarty, who, in turn, had

a good working relationship with Hoffman Construction, the newly appointed construction

manager for the IMFT project in Lehi, Utah, IMFT agreed to award contracts to McLane

Associates for project control services on the Base Build and Tool-Install phases of the project

at IMFT's facility in Lehi, Utah.   Pursuant to those contracts, McLane Associates agreed to

serve as a subcontractor to Hoffman on both the Base Build and Tool-Install phases of the

project at IMFT's Lehi facility.

      McLane Associates's work on the Base Build portion of IMFT's project began in February

of 2006 and ended in April of 2008, while its work on the Tool-Install phase of the project in

Utah began in April of 2006 and was completed in March of 2008.  IMFT insisted that McLane

Associates forward invoices for work conducted on both phases of the Lehi project to Hoffman

in order to receive payment for such work.  From the start of McLane Associates's work on the

Base Build phase of IMFT's Lehi project until approximately the fall of 2008, McLane Associates

received no payment on its invoices associated with that work.   Plaintiff claims that McLane

Associates has not been paid for any of the services it has provided on the Base Build phase of

the IMFT Lehi project.

      During the course of the Base Build phase of IMFT's Lehi project, without McLane

Associates's instruction or consent, Fogarty began asserting to IMFT, Hoffman, and McLane

Associates that he was the "Principal-in-Charge" of McLane's work on IMFT's Lehi project. According to McGrath, however, Fogarty was not at that time, nor was he ever, an employee, officer, or principal of McLane Associates, nor otherwise in possession of either actual or apparent authority to make such an assertion.

Through Fogarty's assertions that he was the "Principal-in-Charge," and through conversations with IMFT and Hoffman (to which McLane Associates was not a party), Fogarty convinced IMFT and Hoffman that all invoices in connection with McLane Associates's work on the Base Build phase of IMFT's Lehi project should come directly from Fogarty Enterprises, not McLane Associates, and that, likewise, all payments on McLane Associates's work on the Lehi Base Build project should be made to Fogarty Enterprises.

McGrath claims that Fogarty then insisted to McLane Associates that it must submit all invoices on the Base Build phase work to Fogarty Enterprises, which would then invoice IMFT and Hoffman through Fogarty Enterprises. Fogarty, however, assured McLane Associates that when IMFT and Hoffman paid Fogarty Enterprises on those invoices, Fogarty Enterprises would pass funds from those payments back to McLane Associates.

Fogarty, however, never provided McLane Associates with a purchase order, draft contract, or any other document purporting to memorialize this newly proposed arrangement. McLane Associates never consented to Fogarty's insistence that he was the "Principal-in-Charge" of the work with IMFT on the Base Build portion of the Lehi project, that all invoices properly should go solely through Fogarty Enterprises or that all payments for Base Build phase

work should properly be funneled through Fogarty Enterprises.

Nevertheless, in order to eliminate any suggestion that McLane Associates should not be paid for the substantial work it continued to carry out, McLane Associates invoiced Fogarty Enterprises for work conducted on the Base Build phase of the Lehi project, in addition to also invoicing both IMFT and Hoffman.

McLane Associates continued sending invoices in a timely manner for work done on the Base Build phase of the Lehi project to IMFT, Hoffman, and Fogarty Enterprises through the end of its work on that phase of the project.   McGrath claims that Fogarty refused to invoice Hoffman, in accord with his own proposed arrangement, for work performed by McLane Associates on the Base Build phase of IMFT's Lehi project. McGrath asserts that McLane Associates never received payment on any of its invoices despite sending invoices for amounts past due to IMFT, Hoffman, and Fogarty Enterprises both during and after the completion of its work on the Base Build phase of the Lehi project.

According to McGrath, during this time, Fogarty transitioned Fogarty Enterprises staff to McLane Associates, and McLane Associates paid the wages for these individuals.  Fogarty, however, never forwarded revenue collected for McLane Associates's work on the Base Build phase of IMFT's Lehi project to McLane Associates.

By the completion of McLane Associates's work on the Base Build phase of IMFT's Lehi project, McLane Associates had unpaid invoices in amounts exceeding $1,000,000.  McGrath claims that, out of this total, McLane Associates received payments on its invoices in a total

amount of only $165,487.50.  As a result, Mcgrath asserts, the principal on the unpaid amounts invoiced by McLane Associates to Fogarty Enterprises and Hoffman Construction is $982.865.73.

McGrath claims that he and others on behalf of McLane Associates had conversations with IMFT personnel, Hoffman personnel, and with Fogarty regarding the failure to make timely payment on McLane Associates's invoices.  After many such conversations, it became clear that Fogarty had no intention of ensuring that payments made by IMFT and Hoffman to Fogarty Enterprises would be passed on to McLane Associates.  Rather, Fogarty took the position that McLane Associates owed Fogarty Enterprises an amount sufficient to offset, in whole or in part, the amounts due to McLane Associates for its work on the Base Build phase of IMFT's Lehi project, and that, as a result, he would not disburse funds owed McLane Associates for its work on that project.   McGrath contends, however, that McLane Associates owed Fogarty Enterprises substantially less than the more-than-$1,000,000 Fogarty retained, and continues to retain, for work done by McLane Associates.

Pursuant to an agreement dated December 11, 2012, McLane Associates assigned to McGrath the sole and exclusive right to pursue the collection of receivables owed to McLane Associates, including those receivables owed in connection with McLane Associates's work on the Base Build phase of IMFT's Lehi project, and to otherwise enforce McLane Associates's rights in connection with those receivables.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   A fact dispute is "material if it might affect the outcome of the suit under governing law." *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   Moreover, a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party on the issue." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (quoting *Anderson*, 477 U.S. at 248) (internal quotation marks omitted)).   When considering a motion of summary judgment, the court views "all facts [and evidence] in the light most favorable to the party opposing summary judgment." *S.E.C. v. Smart*, 678 F.3d 850, 856 (10th Cir. 2012) (quoting *Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) (alternations in original)).   Moreover, the affidavit supporting or opposing motions for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matter stated." Fed. R. Civ. P. 56(c)(4); *Smart*, 678 F.3d at 856.

"The moving party has 'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2003)).   The moving party's initial burden

8

may be met merely by identifying portions of the record which show an absence of evidence to

support essential elements of the opposing party's case. *Kannady*, 590 F.3d at 1169 (10th Cir.

2010); *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000).  However,

"[i]f the movant carries this initial burden, the nonmovant may not rest on its pleadings, but

must bring forward specific facts showing a genuine issue for trial as to those dispositive

matters for which it carries the burden of proof."  *Kannady*, 590 F.3d at 1169 (quoting *Jenkins*

*v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)).   The central inquiry is "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 252

(1986).

### III.  UNDISPUTED MATERIAL FACTS

In this case, there are few facts that are material to the resolution of the instant

motion.   It is undisputed that McLane and the Fogarty Defendants entered into some type of

agreement regarding their business relationship.  It is also undisputed that a draft "Commission

Agreement," which McGrath contends is the agreement between the parties, was never signed

or dated by either party.  Finally, there is no dispute that statute of limitations began to run by

the summer of 2008 at the latest,[3] and that Plaintiff filed the instant lawsuit on February 28,

---

[3] Defendants argue that the limitations period began to run as early as July 2005, and they provide evidence to support such an assertion.   But because Plaintiff acknowledges that he knew by the summer of 2008 that the Fogarty Defendants intended to breach the contract, the court will simply assume that the limitations began to run by the summer of 2008. *See*, *e.g.*, Plaintiff's Mem. in Opp'n at 16 of 30;  18 of 30; 19 of 30; 21 of 30, and 24 of 30.

2014.

## IV.  FOGARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In their Motion for Summary Judgment, the Fogarty Defendants argue that the statute of limitations bars Plaintiffs' claims.  They contend that Utah law requires that claims based on an oral contract be brought within four years after the cause of action arises, and, they argue, any claims McGrath had against Fogarty should have been brought in June of 2010, within four years of McLane's first and only payment to Fogarty under the presumed merged entity.

Alternatively, they argue, the Court could find that the statute began to run at the first breach of the oral agreement because McGrath claims Fogarty failed to perform as agreed from the beginning, in which case McGrath's claims should have been brought by 2009.   As a final alternative, they contend that in the event the court finds the statute began to run when Fogarty failed to pay McGrath on its last invoice, the statute began to run in December of 2007. In other words, they argue that no matter the scenario, McGrath's claims against the Fogarty Defendants should have been brought no later than December of 2011.   Because the claims were not brought until 2014, they urge the court to enter judgment in their favor.

McGrath, however, argues that the action is not time-barred because the parties executed a written contract, which has a six-year statute of limitations pursuant to Utah Code Annotated § 78B-2-309(2).  Although there is no dispute that the Commission Agreement is marked as a "Draft" version and is unsigned, Plaintiff contends that McLane Associates and Fogarty understood that this document constituted a final and binding contract between the

parties that memorialized the material terms of that contract.   Plaintiff argues that the statute

of limitations began to run in the summer of 2008, and the Complaint was filed in February

2014–within the 6-year limitations period for a written contract.

### A.  Discussion

The primary issue in this case is whether a four- or six-year state of limitations governs

this dispute, and the answer depends upon whether there is a written contract between the

parties.   The presence, or absence, of parties' signatures on a contract is not a requisite for the

existence of a binding and enforceable written contract.  Rather,

> [a] binding contract can exist only where there has been mutual assent by the
> parties manifesting their intention to be bound by its terms. Furthermore, a
> contract can be enforced by the courts only if the obligations of the parties are
> set forth with sufficient definiteness that it can be performed.

*Brown's Shoe Fit Co. v. Olch*, 955 P.2d 357, 363 (Utah Ct. App. 1998) (quoting *Bunnell v. Bills*,

368 P.2d 597, 600 (Utah 1962)); *see also In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex. Ct.

App. 2004) ("According to Corbin, if the parties have unconditionally assented to terms stated

in an unsigned document, the document constitutes a binding written contract, regardless of

whether it is signed.") (citing 1 Arthur Linton Corbin, Corbin on Contracts § 2.10, at 168 (Joseph

M. Perillo rev., 1993)).

McGrath contends that the draft Commission Agreement, which he acknowledges was

never signed, still constitutes a written contract.  He testifies in his affidavit that "the parties

agreed that the Commission Agreement, attached as Exhibit 1 to the Fogarty Defendants' brief,

would constitute the written contract governing their business arrangement."[4]  Thus, he argues

that the court is required, in the context of the present motion, to construe all facts and

reasonable inferences in the light most favorable to him, as the nonmoving party, and

therefore, he asserts, the court must deny the motion.

McGrath, however, is incorrect.  His affidavit merely conclusorily sets forth that

"McLane Associates and Fogarty understood that this document constituted a final and binding

contract between the parties that memorialized the material terms of that contract. . . . .  In

fact, the parties carried forward with work on IMFT's Lehi project with the expectation and

understanding that the Commission Agreement governed the terms under which each would

receive their compensation in connection with the work conducted by McLane Associates on

that project."[5]  An affidavit, however, "must be made on personal knowledge, set out facts

that would be admissible in evidence, and show that the affiant or declarant is competent to

testify on the matter stated."  Fed. R. Civ. P. 56(c)(4); *see also Smart*, 678 F.3d at 856.  Here,

McGrath has not established (nor could he) that he is competent to testify about or that he has

personal knowledge of Fogarty's understanding concerning the proposed draft of the

Commission Agreement.  McGrath's statement about Fogarty's understanding is simply not

admissible in evidence.  Moreover, conclusory and self-serving affidavits are not sufficient to

create a genuine issue of material fact to preclude summary judgment.  *Hall v. Bellmon*, 935

---

[4]  *See* Docket No. 36-2.

[5]  Docket No. 38-1, McGrath Affidavit, ¶ 22.

F.2d 1106, 1111 (10th Cir. 1991).

Aside from McGrath's inadmissible testimony, McGrath has not offered any evidence to create a genuine issue of material fact concerning whether a written agreement exists or whether the draft Commission Agreement was anything more than a draft.  On the contrary, the Fogarty Defendants dispute that this draft was the agreement between the parties, pointing out that the purported agreement was produced by McGrath in discovery as the only evidence of any written agreement.  They also point out that it is marked "draft," is unsigned and undated, and has no explanation accompanying it.[6]  Relying on McGrath's own documents and testimony, the Fogarty Defendants have also presented evidence that Plaintiff substantially changed the payment terms set forth in the draft agreement and that the parties did not adhere to several of its provisions.

Thus, the court finds that the Fogarty Defendants have carried their initial burden of showing that McGrath does not have enough evidence to carry his burden of persuasion at trial and that summary judgment is appropriate as a matter of law.   To the contrary, Mr. McGrath has failed to set forth specific facts showing that there is a genuine issue regarding  whether a written contract exists in this case.   Therefore, the court finds that the draft Commission Agreement does not constitute a written agreement and that a four-year statute of limitations applies.  Because this action was not filed within four years of the running of the statute of

---

[6]  The court notes that the draft Commission Agreement is not self-explanatory and could not, without more, constitute a binding contract.

limitations, which was in the summer of 2008, at the latest, the action is time-barred.[7]

Even if the draft Commission Agreement were construed to be a written contract, Utah law provides that, if material terms are altered orally, the four-year statute of limitations applies. *See Strand v. Union Pac. R. Co.*, 312 P.2d 561, 563 (Utah 1957) ("In contract terms, the oral modifications [. . . .  changing some of the terms rendered the contract part oral and part written, and the four year statute of limitations applies."). Because the Fogarty Defendants have presented evidence that material terms were orally altered, the four-year limitations period would apply in any event, and this action would still be time-barred.

As an alternative argument, McGrath contends that a party can be estopped from raising the statute of limitations as a defense where "there is conduct by act or omission, by which one party knowingly leads another party, reasonably acting thereon, to take some course of action, which will result in his detriment or damage if the first party is permitted to repudiate or deny his conduct or representation." *See Buxton v. Diversified Resources Corp.*, 634 F.2d 1313, 1318 (10th Cir. 1980) (quoting *J. P. Koch, Inc. v. J. C. Penney Co., Inc.*, 534 P.2d 903, 905 (Utah 1975)). He argues that Fogarty's acknowledgments [in April 2008] of the debt he owed "caused me to believe he would not rely on legal technicalities to claim that he was

---

[7] The Fogarty Defendants claim that all of McGrath's claims against Fogarty were untimely brought because his other claims (conversion, quantum meruit/quasi contract, and intentional interference with economic relations) are also subject to a four-year statute of limitations. McGrath does not disagree that these claims are subject to a four-year limitations period, but argues instead that the Fogarty Defendants did not actually seek summary judgment on these claims. The court disagrees and finds that because a four-year statue of limitations applies to all McGrath's claims, the entire action is time-barred.

entitled to simply keep all of the money earned by McLane Associates on IMFT's Lehi project."

While Fogarty denies that he has ever acknowledged any debt to McGrath, the fact remains

that even if Fogarty had made such an acknowledgment, McGrath has not demonstrated that

Fogarty made any statement or acted in a way which would have caused McGrath to fail to file

his causes of action.   In fact, in April of 2008, Fogarty requested that parties submit their

differences to an arbitrator to resolve their differences.  The court cannot find that the Fogarty

Defendants are estopped from asserting a statute of limitations defense.

    McGrath also attempts to avoid the inevitable dismissal of his claims by arguing that

Utah law provides a statute of limitations for six years from the date a party provides a written

acknowledgment of a debt.   He claims that Fogarty acknowledged in an April 2008 email – and

again in an affidavit supporting a Motion to Vacate the Order Setting Aside Default Judgment –

that he owed a debt to McGrath.   But it is well and long-settled law in Utah "where the bar of

the statute of limitations is effective against the debt, where the statute has run, and  it is

sought to avoid the effect by a new promise or acknowledgment, such promise must be in

writing and signed by the party to be bound because it in effect revives or creates a new legal

liability which could not otherwise be asserted or established."  *Bracklein v. Realty Ins. Co.*, 80

P. 2d 471, 478 (Utah 1938).  The acknowledgment [of a debt] must be "clear, distinct, direct,

unqualified and intentional," and "it must be more than a hint, a reference, or a discussion of

an old debt; it must amount to a clear recognition of the claim and liability presently existing."

*Wells Fargo Bank, N.A. v. Temple View Investments*, 82 P.3d 655, 658 (Utah Ct. App. 2003)

(citations and quotations omitted).   Here, there is no such clear and unqualified

acknowledgment, and thus, the six-year statute of limitations does not apply.

    For the foregoing reasons, the court finds that McGrath's claims against the Fogarty

Defendants (and also against Hoffman) are time-barred because they were brought more than

four years after the statute of limitations began to run.

### V.  PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER SETTING ASIDE DEFAULT

    McGrath has moved for reconsideration of the court's August 20, 2014 Order that set

aside a default certificate against the Fogarty Defendants.  In April 2014, a default certificate

was executed by the Clerk of Court after the Fogarty Defendants did not timely Answer the

Complaint.[8]  Approximately three weeks after the Default Certificate was entered, the Fogarty

Defendants later filed a Motion to Set Aside the Entry of Default,[9] which the court ultimately

granted.[10]

    McGrath now argues that Fogarty, in his affidavit supporting the motion to set aside the

default,  misled the court and that the court set aside the default certificate based on Fogarty's

misrepresentations.  Specifically, McGrath takes issue with Fogarty's representation that "I

have possession of the 'Base Build' project money, which I have placed in a lodgment for

safekeeping."  McGrath asserts that he did not know that the money at issue was *not* being

---

[8] Docket No. 15.

[9] Docket No. 20.

[10] Docket No. 31.

16

held in an escrow-type account until recently, when Fogarty filed his reply memo supporting

his summary judgment motion.   In the reply memo, Fogarty states:

> Fogarty also wishes to acknowledge an error in verb tense in his
> affidavit. He had placed the money in a lodgment in 2008 while
> the parties attempted to settle their differences. When
> negotiations ceased in late summer of 2008, Fogarty moved the
> money from the lodgment to an investment home in Chandler,
> Arizona. Fogarty is still in possession of the home.

McGrath also argues that it has now become clear that Fogarty held only about half the

funds in a "lodgement" and that he held the money for only four months before he used it to

purchase a home.   Therefore, Plaintiff argues that Fogarty's "brazen misrepresentations" to

the court as part of an ultimately successful effort to have the court set aside the default

entered against him, worked a fraud on the court.   As a result, Plaintiff argues, the Court

should reopen its consideration of the Fogarty Defendants' motion seeking to have the default

entered against them set aside and reverse its decision, once again entering a default

certificate against the Fogarty Defendants.

While the court agrees that Fogarty's representation was less than forthright, it was not

that specific representation that caused the court to set aside the default certificate.  For

almost two decades, the court has always set aside default certificates in similar situations

when no default judgment has yet been entered and when a defendant has filed such a motion

within 1-2 months of the default certificate having been entered and the defendant has a

plausible excuse.  The court strives to resolve conflicts on the merits rather than on such

technicalities.  Therefore, the court declines to reconsider the Order setting aside the default

certificate.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that the Fogarty Defendants' Motion for Summary Judgment [Docket No. 36] is GRANTED, and Plaintiff's claims against the Fogarty Defendants are DISMISSED with prejudice.   In addition, the claims against Hoffman Construction are DISMISSED with prejudice.  Plaintiff's Motion for Reconsideration of Order Setting Aside Entry of Default Against the Fogarty Defendants [Docket No. 42] is DENIED.  Each party is to bear his/its own costs.  The Clerk of Court is directed to close the instant case after entering Judgment in favor of Defendants Jeremiah D. Fogarty, Fogarty Enterprises LLC, and Hoffman Construction Company of America and against Plaintiff William L. McGrath.

DATED this 1st day of July, 2015.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

18